IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **LEAH WYNETTE WILLIAMS,** | ) | |
| and | ) | |
| **PHYLLIS ANN WILLIAMS**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. <u>7:17CV446</u> |
| | ) | |
| **LISA ANNETTE LIPSCOMB,** | ) | |
| **JAMES AYERS,** | ) | |
| and | ) | |
| **PLATINUM CORRAL, LLC,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT FOR MONETARY DAMAGES

Leah Wynette Williams and Phyllis Ann Williams file this action under

Virginia state law and 42 U.S.C. §§ 2000a and 1981 as the statutory vehicles to

vindicate their rights, including their rights under the U.S. Constitution.

## PRELIMINARY STATEMENT

1.

This is a classic but unfortunate example of the racism that still lives in our

communities. The Williams family is African American. On August 27, 2017, her

10-year-old daughter's birthday, Leah Williams ("Leah") allowed her daughter

to choose any restaurant to celebrate her birthday. She chose the Golden Corral

Restaurant located at 1441 Towne Square Blvd NW, Roanoke, VA 24012 (the "Restaurant"). What a mistake. Upon entering, the Williams family was met with immediate hostility—staff shouting at the family and refusing to let them sit where they wanted. The Williams family were the only African American customers in their section, and all other customers were white.

2.

Half-way through their meal, this hostility took an uglier turn, and their server, Lisa Lipscomb—a notorious racist—accused the Williams family of stealing food by allegedly stuffing food (chicken legs, as Lipscomb later told the police) in the purse of Phyllis Williams ("Phyllis"). This was a lie, and Lipscomb knew it was a lie. After adamantly denying the accusations, the family was approached by the manager, James Ayers, who told them they were accused of stealing food and attempted to look in Phyllis's purse. Aghast and disturbed, Leah and Phyllis told Ayers he had no right to look in her purse, and Ayers responded by telling the family he would just look at the video footage and call the police. In fear for her family's lives and safety, Leah called the police herself to report what was happening. Meanwhile, Lipscomb and two white men at the table nearby gleefully jeered the Williams family.

3.

Ayers returned, and Leah immediately asked what the video showed. Ayers refused to answer that question. But, instead of apologizing for falsely accusing the Williams' family of stealing, Ayers made up a new reason to kick the Williams family out: he told Leah that she and her family were trespassing. Leah insisted on waiting for the police before leaving, so her family, and Ayers, did just that. The female police officer arrived, and repeatedly requested to see the subject video, and each time Ayers told her: no. With no evidence upon which to charge any members of the Williams family with theft, Ayers insisted that the grandmother, Phyllis, be barred from the Restaurant for life. Thus the officer provided Phyllis with a trespass warrant but there was an odd twist: the location from which Phyllis is currently barred is her own P.O. Box address. (See Ex. 1.)

4.

Leah posted her experience on social media and people responded quickly, identifying Lipscomb and explaining that Lipscomb had a long history of being a dogged bigot, and racist. The Restaurant owner, Platinum Corral, apologized for the incident, taking full responsibility for the mistreatment of the Williams family. Meanwhile, Platinum's employee, Lipscomb, also reached out to the

Williams family, Lipscomb telling Leah, "U have done enough, I will have UR

ass." The next day, Leah was granted an emergency protection order from

Lipscomb, who continues to be employed by Platinum Corral.

## JURISDICTION AND VENUE

### 5.

Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4), as well as

under 42 U.S.C. § 1983. And Venue is proper under 28 U.S.C. § 1391(b) and on

the supplemental jurisdiction of this Court to adjudicate claims arising under

state law pursuant to 28 U.S.C. § 1367(a).

## THE PARTIES

### A.  Leah Wynette Williams, Plaintiff

### 6.

Leah Wynette Williams is a resident of Virginia and competent to stand

trial to defend all claims she has made against these Defendants. At the time of

the filing of this Complaint, Leah is currently employed. Leah is African

American.

**B.  Phyllis Ann Williams, Plaintiff**

7.

Phyllis Ann Williams is a resident of Virginia and competent to stand trial to defend all claims she has made against these Defendants. At the time of the filing of this Complaint, Phyllis is 73 years old and retired. Phyllis is African American.

**C.  Lisa Annette Lipscomb, Defendant**

8.

At all times relevant, Lisa Annette Lipscomb was a server at the Golden Corral Restaurant located at 1441 Towne Square Blvd NW, Roanoke, VA 24012 and an employee of Platinum Corral, LLC, a franchisee of Golden Corral Franchising Systems, Inc. Lisa Lipscomb is white. Lipscomb has a criminal history that includes convictions for resisting arrest and obstructing a law enforcement officer.

**D. James "Jimmy" Ayers, Defendant**

9.

At all times relevant, James Ayers was the General Manager of the Golden Corral Restaurant located at 1441 Towne Square Blvd NW, Roanoke, VA 24012 and an employee of Platinum Corral, LLC, a franchisee of Golden Corral

Franchising Systems, Inc. At all times relevant, Ayers was the supervisor of Defendant Lipscomb and the primary decision maker at the Restaurant who hired and continued to employ Defendant Lipscomb. James Ayers is white.

### E. Platinum Corral, LLC, Defendant

10.

At all times relevant, Platinum Corral, LLC, was a North Carolina company engaged in the restaurant business in Virginia that owned and operated the Restaurant, a place of public accommodation within the meaning of 42 U.S.C. § 2000a. At all times relevant, Platinum Corral, LLC was a franchisee of Golden Corral Franchising Systems, Inc.

Platinum Corral, LLC hired Defendant Ayers as the General Manager of the Restaurant and hired Defendant Lipscomb as a server. At all times relevant, Platinum Corral, LLC had an obligation under contract to ensure the general managers of its Golden Corral restaurants operating under the ownership of Platinum Corral, LLC were adequately trained and aware of all laws regarding civil rights violations at places of public accommodation. All eight (8) members of Platinum Corral, LLC's executive team are white.

Platinum Corral, LLC has its principal place of business located at 195 Holt-Garrison Pkwy, Danville, VA 24540 and may be served at the address of its

registered agent, CT Corporation System, located at 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

## RELEVANT FACTS

### A. Phyllis Williams's granddaughter's "birthday dinner" at Golden Corral

11.

On August 27, 2017, Phyllis Williams went to the Restaurant with her daughter, Leah Williams, her granddaughter (Leah's daughter), and her grandson (Leah's son) (collectively, the "Williams family").

12.

The Williams family chose to go to the Restaurant because it was Leah's daughter's 10th birthday, and Leah let her daughter choose a restaurant. The birthday girl chose Golden Corral.

13.

The Williams family arrived at the Restaurant at approximately 7:50 p.m.

14.

Upon entering, the Williams family walked to the entrance counter where drink orders are placed before sitting at a table; the Williams family was not greeted by the person who does drinks with a hello or a smile, but rather, the

family was shouted at by an employee who shouted, "What do you want to drink?"

15.

After ordering their drinks, the Williams family proceeded to a table in Leah's daughter's favorite section, but they were informed that the section was closed. The Williams family then proceeded to another table. Two white men were seated at the table behind them.

16.

Nearly every customer in the Restaurant at the time the Williams family was in the Restaurant was white.

17.

The Williams family constituted the only African Americans present on the side of the Restaurant where they were seated.

18.

Plaintiffs went to the dinner buffet and paid the fixed price for all four members of the Williams family.

19.

While eating dinner, Leah and Phyllis noticed their server, Defendant Lisa Lipscomb, continuously sweeping the floor around the Williams family's table.

20.

When the two children returned to the table with their desserts, Lipscomb walked up to the table and said, "I want to warn you there are cameras, and if you are taking food, you need to put it back on the table." Lipscomb then walked away.

21.

Leah and Phyllis were baffled by Lipscomb's statements because at no time did they or the children "take" or attempt to "take" any food from the Restaurant.

22.

Lipscomb returned to the table with Defendant Jimmy Ayers, the General Manager, who told the Williams family that there is a $3 charge for take-out food and that Lipscomb informed him that she saw Phyllis putting food in her purse.

23.

At no time did any member of the Williams family put any food in Phyllis's purse.

24.

Ayers told Leah and Phyllis that he would be searching Phyllis's purse, and they refused, telling Ayers that he had no good reason to search her purse, and that he was embarrassing the family for no good reason.

25.

Ayers told Leah and Phyllis that he would simply check the footage on his surveillance cameras, and that he would also call the police. Ayers then walked away from the table.

26.

When Ayers left the table, Leah and Phyllis felt afraid for the children and themselves, so Leah called the police at approximately 8:29 p.m. to report that the Williams family was being harassed and falsely accused at the Restaurant.

27.

At approximately the same time, Phyllis began filming the event with a smartphone.

28.

As they sat waiting for the police to arrive, Leah, Phyllis, and the children observed Lipscomb speaking with the two white men at the table behind them and observed them looking over at the Williams family, laughing.

29.

Leah observed Lipscomb apologize to the two white men. On information and belief, Lipscomb told the two white men that Leah and Phyllis were taking food.

30.

When Ayers returned, Leah asked Ayers if he had reviewed the video surveillance and Ayers refused to answer that question, i.e., Ayers refused to confirm that he had seen Phyllis place any food in her purse on the alleged video surveillance cameras.

31.

No video surveillance that Ayers reviewed showed any member of the Williams family placing any food in Phyllis's purse.

32.

No video surveillance that Ayers reviewed showed any member of the Williams family placing any food in Leah's purse.

33.

No video surveillance that Ayers reviewed showed any member of the Williams family serving themselves with large quantities of food (including chicken) at the food counters.

34.

Ayers reviewed the subject video and saw that the video did not show any member of the Williams family putting any food items in Phyllis's purse.

35.

Ayers reviewed the subject video and saw that the video did not show any member of the Williams family serving themselves with large quantities of chicken.

36.

Ayers and Lipscomb accused Phyllis of placing numerous chicken legs in her purse.

37.

Ayers and Lipscomb accused Leah of placing chicken legs in her purse.

38.

After refusing to admit that the subject video surveillance cameras did not show any member of the Williams family stealing any food, Ayers informed the Williams family that they were trespassing and thus they had to leave the Restaurant.

39.

After Ayers told the Williams family that they were trespassing, Leah told

Ayers that they would not be leaving until the police arrived, and Ayers

permitted the Williams family to stay until the police arrived.

40.

When the police arrived, the responding officer, Officer Fleichman,

confirmed with Leah that she was responding to Leah's 911 call.

41.

Officer Fleichman informed the Williams family that Ayers still wanted the

Williams family to leave after they had been asked to leave the Restaurant and

that Phyllis was being barred from the property for the rest of her life.

42.

As the Williams family was leaving, Officer Fleichman gave Phyllis a piece

of paper to sign entitled "Trespass Bar Letter," purporting to indicate that Phyllis

Ann Williams was barred from the Restaurant. In the section of the letter asking

to "Briefly describe act(s) here", the box "Owner/Mgr. Request" was ticked;

neither the box for "Shoplifting" nor the box for "Trespassing" were ticked.

43.

The Trespass Notice that Officer Fleichman filled out and gave to Phyllis states that the address of the property from which that Phyllis is allegedly barred is actually Phyllis's own P.O. Box address—not the address of the Restaurant.

44.

Prior Lipscomb and Ayers accusing the Williams family of theft, Leah and Phyllis Williams had already paid for their meal.

**B. The aftermath and Platinum Corral's Facebook apology**

45.

On August 28, 2017, Leah posted on Facebook video, showing a portion of the subject incident as recorded by Phyllis on a smartphone.

46.

On August 28, 2017, Leah also posted on Facebook a detailed description of the incident, to which many people responded in outrage at the way the Williams family was treated.

47.

On August 28, 2017, Leah filed a formal complaint with the Better Business Bureau describing the incident in detail.

48.

A few days after the incident was made public and shared on Facebook

nearly *4,000 times*, Platinum Corral responded to Leah's Facebook post.

49.

Platinum Corral responded to Leah's Facebook post, stating:

After evaluating all of the details, we would like to extend a heartfelt
apology to Leah and her family for their experience dining with us
yesterday evening. We recognize the situation was not handled properly
and we are taking the appropriate steps internally to assess what we could
have done differently while also implementing additional training for our
employees. The well-being and respect for our guests and employees are
always top priorities for us, and we are working diligently to make this
right. Leah, we have sent you an email requesting the opportunity to speak
with you directly to offer our apologies. – Platinum Corral, a franchise of
Golden Corral.

50.

Despite the apology, Lipscomb has not been disciplined for her conduct.

51.

Despite the apology, Ayers has not been disciplined for his subject

conduct; in fact, Platinum Corral claimed Ayers had been put on administrative

leave, when in fact, he was simply moved to a different Golden Corral

restaurant.

**C. Lisa Lipscomb, a known racist, continues to harass the Williams family to the point that an Emergency Protective Order has been issued against Lipscomb.**

52.

People who responded to Leah's Facebook post about the subject incident, discussed Lipscomb storied community reputation as a racist.

53.

Lipscomb is well known in the Roanoke community as a racist who regularly uses the "N" word to refer to African Americans, according to some.

54.

Lipscomb has an extensive criminal history to include charges filed and arrests for: Driving While Intoxicated (2013); Intentional Property Damage (2012); Abusive, Profane, and Threatening Phone Calls (2012); Simple Assault Against a Family Member (2011); Driving Under a Suspended/Revoked License (2005); Contempt (2004); Driving Under the Influence (2004); Driving Under the Influence (2003); Assault and Battery Against a Law Enforcement Officer (2000); Phone Threats (1998); Resisting Arrest (1995); Impaired Driving (1995); Filing a False Police Report (1994); No Shelter for a Dog (1993); Phone Threats (1993); Driving While Intoxicated (1993); and Assault and Battery (1988).

55.

On September 9, 2017, Leah received a message on Facebook from Lisa Lipscomb, stating: "U have done enough, I will have UR ass." Lipscomb then accused Leah of lying in her Facebook post about the incident and accused Leah, Phyllis, and the children of stealing from the Restaurant.

56.

On September 10, 2017, Leah filed a criminal complaint in the city of Salem, VA against Lipscomb describing the messaging she received from Lipscomb, stating that she feared for the life and safety of herself and her family, and requesting that Lipscomb not be allowed to continue to direct threats at the Williams family.

57.

Later that day, September 10, 2017, a judge issued an Emergency Protective Order directing Lipscomb that she shall not commit acts of violence, force, or threat or criminal offenses resulting in injury to person or property and that in order to protect the safety of Leah and her family Lipscomb shall have no contact of any kind with Leah Williams, under no exceptions. The order further provided that Lipscomb was prohibited under the order from being in the physical presence of Leah Williams.

58.

At all relevant times, Defendants had a written policy that no one entering the subject Golden Corral would be discriminated upon based on race, and thus all customers would enjoy equal treatment.

## COUNT I

### VIOLATION OF PLAINTIFFS' RIGHTS UNDER 42 U.S.C. § 2000a
*(Against All Defendants)*

59.

Plaintiffs fully incorporate paragraphs 1 through 58, *and any paragraph this Court deems relevant*, as full stated herein to support this Count.

60.

The Restaurant at all times relevant has been a place of public accommodation within the meaning of 42 U.S.C. § 2000a. Based on the incorporated facts to support his Count, at least part of the motivation for the above-described conduct by Defendants Ayers and Lipscomb was Plaintiffs' and their accompanying family's race. The above-described conduct violates 42 U.S.C. § 2000a, which prohibits discrimination in places of public accommodation on account of race. Because Ayers and Lipscomb were employees and agents of Platinum Corral, LLC at the time of the above-described conduct, Platinum Corral, LLC is liable for the conduct of Ayers and Lipscomb.

61.

Defendants are liable to Plaintiffs for all permissible damages as well as attorney's fees and cost of bringing this litigation.

## COUNT II

### VIOLATION OF PLAINTIFFS' RIGHTS TO CONTRACT UNDER 42 U.S.C. § 1981
*(Against All Defendants)*

62.

Plaintiffs fully incorporate paragraphs 1 through 58, *and any paragraph this Court deems relevant*, as full stated herein to support this Count.

63.

At the time that Lipscomb and Ayers began wrongfully accusing the Williams family of theft based on their race, Leah and Phyllis Williams had already paid for their meal and had a contractual interest in dining at Golden Corral and enjoying the benefits of that interest in the same ways that other, white customers were permitted to enjoy those benefits.

64.

Among the benefits in which Leah and Phyllis Williams had a contractual interest while dining at Golden Corral, like white customers, were the benefits of eating their meals with Leah's children in peace (i) without being racially

discriminated against and harassed at least in part because they are African American; (ii) without the wait staff knowingly and wrongfully accusing them of theft at least in part because they are African American; (iii) without the management knowingly and wrongfully accusing them of theft at least in part because they are African American; (iv) without the management calling the police on them and falsely accusing them of theft at least in part because they are African American; and (v) without being forced to leave the Restaurant during their meal after the wait staff and the management knowingly and wrongfully accused them of theft at least in part because they are African American.

65.

Based on the incorporated facts to support this Count, and because Leah and Phyllis Williams had a contractual interest in dining at Golden Corral and enjoying the benefits of that interest in the same ways that other, white customers were permitted to enjoy those benefits, and because Defendants interfered with that right on account of Plaintiffs' race as African Americans, Defendants violated Plaintiffs' rights under 42 U.S.C. § 1981. Plaintiffs suffered loss of sleep and feelings of racial stigmatization, and continue to suffer, and will in the future suffer from feelings of racial stigmatization—all as a result of Defendants' conduct.

66.

As such, Defendants are liable to Plaintiffs for all permissible damages as well as attorney's fees and cost of bringing this litigation.

## COUNT III

### NEGLIGENT HIRING
*(Against Defendant Platinum Corral)*

67.

Plaintiffs fully incorporate paragraphs 1 through 58, *and any paragraph this Court deems relevant*, as full stated herein to support this Count.

68.

Based on the incorporated facts to support this Count, by hiring Lipscomb, Defendant Platinum Corral was negligent because a reasonable investigation would have shown that Lipscomb had a criminal history and a reputation for being an extreme racist and because of the circumstances of employment—in which Lipscomb, as a restaurant server, would be a public face of Platinum Corral and be required to interact with customers of all races and ethnicities—it should have been foreseeable to Platinum Corral that Lipscomb posed a threat of injury to non-white customers.

69.

As such, Defendant is liable to Plaintiffs for all permissible damages as well as attorney's fees and cost of bringing this litigation.

## COUNT IV

### NEGLIGENT RETENTION
*(Against Defendant Platinum Corral)*

70.

Plaintiffs fully incorporate paragraphs 1 through 58, *and any paragraph this Court deems relevant*, as full stated herein to support this Count.

71.

Based on the incorporated facts to support this Count, by continuing to employ Lipscomb for many months after hiring her, Defendant Platinum Corral was negligent because based on Lipscomb's criminal history and regular use of racial slurs, including calling African Americans the "N" word, Platinum Corral knew or should have known that Lipscomb was dangerous and likely to cause injury to the non-white customers of the Restaurant.

72.

As such, Defendant is liable to Plaintiffs for all permissible damages as well as attorney's fees and cost of bringing this litigation.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*(Against Defendants Lipscomb and Ayers)*

73.

Plaintiffs fully incorporate paragraphs 1 through 58, *and any paragraph this Court deems relevant*, as full stated herein to support this Count.

74.

By (i) accusing Phyllis and Leah of stealing food with zero evidence to support the accusation, (ii) telling her supervisor Defendant Ayers the same, and (iii) telling the police the knowingly false statement that Phyllis and Leah were stealing food, Defendant Lipscomb intentionally sought to embarrass, humiliate, and put fear in the Williams family, including the children. As a result of Lipscomb's conduct, Phyllis suffered severe emotional distress such as loss of sleep and persistent headaches. As a result of Lipscomb's conduct, Leah suffered severe emotional distress such as loss of sleep and persistent headaches.

75.

By (i) accusing Phyllis and Leah of stealing food after Lipscomb told him the same without taking further steps to confirm the truth of Lipscomb's assertion, (ii) continuing to accuse Phyllis and Leah of stealing food after claiming to have video to prove the same, but in fact knowing that he had zero

evidence to support the accusation, (iii) telling the police in a 911 call and in person the knowingly false statement that Phyllis and Leah were stealing food, and (iv) despite knowing that Phyllis and Leah were innocent of any wrongdoing, seeking a Trespass Bar Letter from Officer Fleichman against Phyllis, Ayers intentionally sought to embarrass, humiliate, and put fear in the Williams family, including the children. As a result of Ayers's conduct, Phyllis suffered severe emotional distress such as loss of sleep and persistent headaches. As a result of Ayers's conduct, Leah suffered severe emotional distress such as loss of sleep and persistent headaches.

76.

As such, Defendants Lipscomb and Ayers are liable to Plaintiffs for all permissible damages as well as attorney's fees and cost of bringing this litigation.

**COUNT VI**

**RESPONDEAT SUPERIOR**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
*(Against Defendant Platinum Corral)*

77.

Plaintiffs fully incorporate paragraphs 1 through 58 and 74 through 76, *and any paragraph this Court deems relevant*, as full stated herein to support this Count.

78.

Because Defendants Ayers and Lipscomb were employed by Platinum Corral at the time they engaged in deliberate, racially discriminatory conduct against Plaintiffs constituting the tort of intentional infliction of emotional distress, Platinum Corral is liable to Plaintiffs for the acts of its employees.

79.

As such, Defendant is liable to Plaintiffs for all permissible damages as well as attorney's fees and cost of bringing this litigation.

## COUNT VII

### DEFAMATION PER SE
*(Against Defendants Lipscomb and Ayers)*

80.

Plaintiffs fully incorporate paragraphs 1 through 58, *and any paragraph this Court deems relevant*, as full stated herein to support this Count.

81.

By verbally communicating to Ayers, the two white men sitting at the table near Phyllis and Leah, Officer Fleichman, and other third parties in the Restaurant the false statement that Phyllis and Leah were stealing chicken, Lipscomb imputed to Leah and Phyllis the crime of theft, a crime of moral turpitude. These communications thereby defamed Phyllis and Leah, and

Lipscomb is liable to Phyllis and Leah for these defamatory statements under Virginia law.

82.

By verbally communicating to Officer Fleichman the false statement that Phyllis and Leah were stealing chicken, and communicating this statement Ayers imputed to Leah and Phyllis the crime of theft, a crime of moral turpitude. These communications thereby defamed Phyllis and Leah, and Ayers is liable to Phyllis and Leah for these defamatory statements under Virginia law.

83.

As such, Defendants are liable to Plaintiffs for all permissible damages as well as attorney's fees and cost of bringing this litigation.

## COUNT VIII

### RESPONDEAT SUPERIOR
### DEFAMATION PER SE
*(Against Defendant Platinum Corral)*

84.

Plaintiffs fully incorporate paragraphs 1 through 58 and 80 through 83, *and any paragraph this Court deems relevant*, as full stated herein to support this Count.

85.

Because Defendants Ayers and Lipscomb were employed by Platinum Corral at the time they defamed Plaintiffs, Platinum Corral is liable to Plaintiffs for the acts of its employees.

86.

As such, Defendant is liable to Plaintiffs for all permissible damages as well as attorney's fees and cost of bringing this litigation.

## COUNT IX

### NEGLIGENCE PER SE
*(Against Defendants Ayers and Lipscomb)*

87.

Plaintiffs fully incorporate paragraphs 1 through 58, *and any paragraph this Court deems relevant*, as full stated herein to support this Count.

88.

Defendants had a duty not to make knowingly false statements to law enforcement accusing Plaintiffs of a crime, and this duty arises out of Virginia Code 18.2-461 - Falsely summoning or giving false reports to law-enforcement officials.

89.

Because Ayers called the police and made statements to the police on that
phone call that Ayers knew to be false, statements that falsely alleged that Phyllis
and Leah were stealing food, Ayers breached the duty to not to make knowingly
false statements to law enforcement accusing Plaintiffs of a crime.  Because Ayers
made statements to Officer Fleichman that Ayers knew to be false, statements
that falsely alleged that Phyllis and Leah were stealing chicken, Ayers again
breached that duty. Plaintiffs suffered public humiliation and other damages as a
result of Ayers's breach.

90.

Because Lipscomb made statements to Officer Fleichman that Lipscomb
knew to be false, statements that falsely alleged that Phyllis and Leah were
stealing chicken, Lipscomb breached the duty to not to make knowingly false
statements to law enforcement accusing Plaintiffs of a crime. Plaintiffs suffered
public humiliation and other damages as a result of Lipscomb's breach.

91.

As such, Defendants are liable to Plaintiffs for all permissible damages as
well as attorney's fees and cost of bringing this litigation.

## COUNT X

### RESPONDEAT SUPERIOR
### NEGLIGENCE PER SE
*(Against Defendant Platinum Corral)*

92.

Plaintiffs fully incorporate paragraphs 1 through 58 and 87 through 91, *and any paragraph this Court deems relevant*, as full stated herein to support this Count.

93.

Because Defendants Ayers and Lipscomb were employed by Platinum Corral at the time they made false statements to the police that constituted negligence per se to Plaintiffs, Platinum Corral is liable to Plaintiffs for the acts of its employees.

94.

As such, Defendant is liable to Plaintiffs for all permissible damages as well as attorney's fees and cost of bringing this litigation.

## COUNT XI

## PUNITIVE DAMAGES
(*Against all Defendants*)

**Based on the facts alleged in this Complaint**, Plaintiffs are entitled to punitive damages, under all applicable laws, because Defendants acted with a willful and conscience indifference to the laws that protect Plaintiffs' Constitutional rights.

## COUNT XII

## ATTORNEY FEES

**Based on the facts alleged in this Complaint,** Plaintiffs are entitled to attorney fees, under all applicable laws.

**WHEREFORE**, Plaintiffs pray for a trial by jury of twelve and judgment against Defendants as follows:

(a) That process issue and service be had on each Defendant;

(b) That Plaintiffs be awarded all other expenses in an amount to be determined at trial, including attorney fees;

(c) That Plaintiffs recover all costs of this litigation;

(d) That a jury trial be had on all issues so triable;

(e) Plaintiffs have Judgment against Defendants for punitive damages; and

(f)  That Plaintiffs receive such other and further relief as this Court deems

just and proper.

Respectfully submitted on this 26th day of September, 2017,


s/Mario B. Williams
Mario B. Williams (VSB # 91955)

**NEXUS CARIDADES ATTORNEYS, INC.**
44 Broad St. NW, Suite 200
Atlanta, GA 30303
404-654-0288/703-935-2453 FAX
mwilliams@nexuscaridades.com
mario@goodgeorgialawyer.com

31