IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LEAH WYNETTE WILLIAMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:17-cv-00446 |
| | ) | |
| LISA ANNETTE LIPSCOMB, *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiffs Leah and Phyllis Williams bring this action against Lisa Lipscomb, James Ayers, and Platinum Corral, LLC, a franchisee of Golden Corral restaurants. Plaintiffs assert various claims arising from their experience dining at a Golden Corral restaurant on August 27, 2017.

Defendants Ayers and Platinum Corral filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant Lipscomb filed a separate motion to dismiss for failure to state a claim, in addition to a motion to strike portions of the complaint under Federal Rule of Civil Procedure 12(f). These matters have been fully briefed and argued before the court. At the hearing, the court granted Ayers' and Platinum Corral's motion to dismiss for reasons stated on the record. The court granted Lipscomb's motion to dismiss, except it took the motion regarding Counts 2 and 7, under advisement. The court also took Lipscomb's motion to strike under advisement after instructing the parties to confer and submit any agreements regarding the motion to the court, which the parties have done. Thus, the only matters remaining are Lipscomb's motion to dismiss Counts 2 and 7 of the complaint and the disputed matters as to Lipscomb's motion to strike.

For the following reasons, the court will grant Lipscomb's motion to dismiss as to Count 2 and deny it as to Count 7. The court will grant in part and deny in part the motion to strike.

I. BACKGROUND[1]

On August 27, 2017, Leah Williams took her son, daughter, and mother, Phyllis, to Golden Corral for her daughter's birthday. The family paid the fixed price for the dinner buffet. As they ate, their server, Lisa Lipscomb, "continuously swe[pt]" the floor around their table. (Compl. ¶ 19, Dkt. No. 1.) Later, Lipscomb warned the family that there were cameras, and if they were taking food, they would need to put it back on the table. Leah and Phyllis were "baffled by Lipscomb's statements" because neither they nor the children had attempted to take food away from the restaurant. (Compl. ¶ 21.) Even so, Lipscomb returned to the table with the manager, James Ayers. Lipscomb told Ayers that she saw Phyllis putting chicken legs in her purse, even though "[t]his was a lie, and Lipscomb knew it was a lie." (Compl. ¶ 2.)

Ayers told the family about the $3 charge for take-out, and he informed them that he was going to search Phyllis's purse. When the family refused the search, Ayers responded that he would check the surveillance camera footage and call the police. After Ayers walked way, and "[i]n fear for her family's lives and safety," Leah called the police, because the family was "being harassed and falsely accused." (Compl. ¶¶ 2, 26.) Phyllis began filming the event on her phone, and "Lipscomb and two white men . . . gleefully jeered." (Compl. ¶ 2.) Leah observed Lipscomb "apologize" to the two white men, and "[o]n information and belief, Lipscomb told the two white men that Leah and Phyllis were taking food." (Compl. ¶ 26.)

Ayers returned after watching the footage, but he refused to respond when Leah asked what it showed. Plaintiffs allege that the footage did not show any member of the family putting

---

[1] Because Lipscomb's motion to dismiss is outstanding only as to Counts 2 and 7, the court recites only those facts relevant to the two remaining counts against Lipscomb.

food in any purse or even serving themselves with large quantities. Nevertheless, Ayers told the Williams family that they were trespassing and had to leave. Leah insisted on waiting for the police, which Ayers permitted.

Officer Fleichman arrived and "confirmed that she was responding to Leah's 911 call." (Compl. ¶ 40.) Officer Fleichman told the family that Ayers wanted them to leave and wanted Phyllis barred from the property for life. She then asked Phyllis to sign a "Trespass Bar Letter."[2]

## II. DISCUSSION

### A. Lipscomb's Motion to Dismiss

#### 1. Standard of review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable

---

[2] Plaintiffs attach the "Trespass Bar Letter" to the complaint. Neither the box for "shoplifting" nor the box for "trespassing" are marked on the letter, and the address from which it "bars" Phyllis is her own PO box. (Compl. Ex. 1.)

conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

**2. Plaintiffs fail to state a claim against Lipscomb under 42 U.S.C. § 1981.**

The complaint asserts that Lipscomb "interfered with [plaintiffs'] right [to make and enforce contracts] on account of Plaintiffs' race," African American, because plaintiffs had paid for their meal and had a contractual interest in dining at Golden Corral when Lipscomb "began wrongfully accusing the Williams family of theft based on their race." (Compl. ¶¶ 65, 63.) In particular, plaintiffs assert that they had a contractual interest to eat their meals "in peace" without harassment or accusations and without "being forced to leave the Restaurant during their meal." (Compl. ¶ 64.)

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts." Subsection (b) defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). A plaintiff asserting a claim under § 1981 "must show three things: (1) membership in a protected class; (2) discriminatory intent on the part the defendant; and (3) interference with the rights or benefits associated with making and enforcing contracts." *Sparrow v. Bank of Am.*, No. 14-cv-388, 2014 WL 4388350, at *8 (D. Md. Sept. 4, 2014) (citing *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 349 (4th Cir. 2013)). The Fourth Circuit permits a plaintiff to bring a § 1981 claim based on third party interference when the plaintiff shows that the defendant both *possessed sufficient authority* to significantly interfere with the individual's ability to obtain contracts with third

4

parties, and that the [defendant] *actually exercised that authority* to the [plaintiff's] detriment." *Painter's Mill Grille*, 716 F.3d at 351.

At the outset, the court rejects defendant's argument that she is not a proper party under 42 U.S.C. § 1981 because plaintiffs' interests "were only enforceable against the Restaurant, to which Plaintiffs made payments." (Def.'s Mot. to Dismiss 7, Dkt. No. 12.) The cases to which defendant cites refer specifically to the scope of the right to contract regarding retail sales. *See Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 854 (8th Cir. 2001); *Baltimore-Clark v. Kinko's, Inc.*, 270 F. Supp. 2d 695, 699 (D. Md. 2003). But the court's analysis as to a retail transaction is distinct from its analysis as to service in a restaurant because, in the latter context, the contractual relationship "continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased." *Eddy v. Waffle House, Inc.*, 482 F.3d 674, 678 (4th Cir. 2007) *cert. granted, judgment vacated on other grounds*, 554 U.S. 911 (2008) (internal quotations and citations omitted). Furthermore, it is clear that a plaintiff may state a claim against a third party for interfering with her contractual interests. *See Painter's Mill Grille*, 716 F.3d at 349.

Plaintiffs first assert that Lipscomb interfered with their contractual interest to eat their meals in peace without harassment or accusations. Specifically, the complaint alleges that Lipscomb "continuously swe[pt] the floor around [their] table," that she warned them that "there are cameras, and if you are taking food, you need to put it back on the table" and walked away, and that she informed Ayers and two white men that she saw plaintiffs putting food in Phyllis's purse. (Compl. ¶¶ 19–22, 29.)

But these allegations fail to establish that plaintiffs were denied their rights under 42 U.S.C. § 1981. Plaintiffs rely heavily on *Eddy* to support their argument that Lipscomb's

5

conduct created a racially hostile environment in violation of § 1981. But in *Eddy*, the court concluded that discrimination interfered with plaintiffs' contractual interests because "a reasonable person would not expect to be served in an openly hostile environment" where one plaintiff was told by a restaurant employee "We don't serve [a racial epithet] here." 482 F.3d at 678. The court reasoned that "no single act can more quickly . . . create an abusive environment than the use of an unambiguously racial epithet." *Id.* (quotations and citations omitted). Here, while plaintiffs have certainly alleged that their dining experience was unpleasant, they have failed to plausibly allege that for reasons of race they were denied the benefits of their contract due to Lipscomb's conduct. The court cannot reasonably draw the inference from the facts alleged that Lipscomb's "sweeping" and statements effectively denied plaintiffs service or the benefits of their contract with Golden Corral. *See Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 435 (4th Cir. 2006) ("[not] every person who walks into a commercial establishment and is denied service or is otherwise dissatisfied can maintain a § 1981 cause of action . . . loss of business—not litigation—is the usual cost of customer dissatisfaction."); *see also Baltimore-Clark*, 270 F. Supp. 2d at 700 (explaining that Congress's amendment of § 1981 to include the definition of "make and enforce contracts" did not "convert § 1981 into a general prohibition against race discrimination") (citations omitted).

Plaintiffs also assert that Lipscomb interfered with their contractual interest to eat their meals without being forced to leave. But here, too, plaintiffs fail to state a claim. In *Painter's Mill Grille*, the plaintiff sued two of the lawyers representing the plaintiff's landlord, alleging that the lawyers told the prospective buyers of plaintiff's business "that they did not want another 'chicken and waffle shack' at the site and made derogatory comments about the restaurant and its

6

customers." 716 F.3d at 350.[3] The Fourth Circuit held that such comments, even if they resulted in the prospective buyers "breach[ing] their written contract for the purchase of the business," were insufficient to state a claim under 42 U.S.C. § 1981, as "the complaint does not allege that [the lawyers] 'possessed sufficient authority to significantly interfere' with Painter's Mill Grille's contract to sell its business. In addition, no allegations are made that [the lawyers] were exercising that authority when making those remarks." *Id*. at 351 (emphasis in original) (citation omitted). In this case, plaintiffs do not allege that Lipscomb had the authority to force them to leave the restaurant or that she was exercising that authority when sweeping or speaking to Ayers or the two white men. Accordingly, plaintiffs fail to state a claim against Lipscomb under 42 U.S.C. § 1981, and the court will grant her motion to dismiss Count 2.

### 3. Plaintiffs state a claim for defamation against Lipscomb.

The complaint alleges that "[b]y verbally communicating to Ayers, the two white men[,] Officer Fleichman, and other third parties in the Restaurant the false statement that Phyllis and Leah were stealing chicken, Lipscomb imputed to Leah and Phyllis the crime of theft, a crime of moral turpitude." (Compl. ¶ 81.) The complaint also alleges that Lipscomb made these statements even though she knew them to be false. (Compl. ¶ 2.)

To state a claim for defamation under Virginia law, plaintiffs must show that defendant (1) published (2) an actionable statement with (3) the requisite intent. *Charles v. Front Royal Volunteer Fire &Rescue Dep't., Inc.*, 21 F. Supp. 3d 620, 630 (W.D. Va. 2014) (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)). An actionable statement must not only be false, but also defamatory; in other words, it must tend to "harm the reputation of another

---

[3] Plaintiffs argue that the Fourth Circuit's analysis in *Painter's Mill Grille* "has absolutely no applicability to the Plaintiffs' claim under § 1981 because Plaintiffs are not asserting a claim for discriminatory use of contractual power. Rather, Plaintiffs' claims concern the *discriminatory interference* with a contractual interest based on race." (Pls.' Resp. in Opp'n 9, Dkt. No. 20.) But the relevant analysis in *Painter's Mill Grille* concerned the plaintiff's allegations "that defendants' conduct interfered with [its] contractual right." 716 F.3d at 350.

as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id*. (citations omitted). "Furthermore, 'speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person[,] cannot form the basis of a common law defamation action.'" *Id*. (internal citations and quotations omitted). Under Virginia law, "words that impute to a person the commission of a crime of moral turpitude . . . are actionable as defamation per se." *Besen v. Parents & Friends of Ex-Gay, Inc.,* No. 3:12-cv-204, 2012 WL 1440183, at *3 (E.D. Va. Apr. 25, 2012).

Lipscomb argues that plaintiffs fail to assert a cause of action because the pleading contains no quotes or exact words spoken by Lipscomb, as required in a Virginia defamation pleading. The court disagrees. In *Wuchenich v. Shenandoah Memorial Hospital*, No. 99-1273, 2000 WL 665633, at *14 (4th Cir. 2000), the Fourth Circuit reasoned that the district court's requiring the exact words to be pled was erroneous because "Rule 8 does not contain a special pleading requirement for defamation. Thus, according to Rule 8(a), we should test the sufficiency of [the] claim alleging defamation to determine whether it meets Rule 8(a)'s liberal pleading requirement of a short and plain statement showing that [plaintiff] is entitled to relief."

Lipscomb argues that the court's holding in *Wuchenich* is not binding. But as this court recently acknowledged, even though *Wuchenich* was decided before *Twombly* and *Iqbal*, the court's reasoning centered on "the applicability of federal pleading standards—not the substance of those standards that was altered by *Twombly* and *Iqbal*." *Jackson v. Liberty Univ*., No. 6:17-cv-41, 6:17-cv-41, 2017 WL 3326972, at *14 (W.D. Va. Aug. 3, 2017) (denying motion to dismiss defamation allegations despite the plaintiff's not having alleged the exact words used). Furthermore, "the Fourth Circuit has not addressed this issue since *Wuchenich*, so it must still be

considered persuasive on this subject." *Id.* Indeed, other courts within the Fourth Circuit have continued to cite to *Wuchenich* for the proposition that there is no special pleading standard for defamation. *See, e.g.*, *Santos v. Christian*, No. 3:15-cv-476, 2015 WL 7738353, at *4 n.10 (E.D. Va. Nov. 30, 2015); *Elina Adoption Servs., Inc. v. Carolina Adoption Servs., Inc.*, No. 1:07-cv-169, 2008 WL 4005738, at *5 (M.D.N.C. Aug. 25, 2008). Thus, the court will not dismiss plaintiffs' claim on the grounds that plaintiffs failed to allege the exact words Lipscomb used.

Turning to the allegations themselves, plaintiffs have alleged: (1) that Lipscomb reported that they committed theft to Ayers, the two white men, and Officer Fleichman; (2) that Lipscomb's accusations that they committed theft imputed to them the commission of a crime of moral turpitude, *see Waddle v. Claughton*, No. 4:18-cv-10, 2018 WL 3130444, at *6 (W.D. Va. June 26, 2018); and (3) that Lipscomb made these statements despite knowing their falsity. The court concludes that plaintiffs have stated a claim for defamation, and it will deny Lipscomb's motion to dismiss Count 7.

### B. Lipscomb's Motion to Strike

Lipscomb moves to strike from the complaint paragraphs 4, 8, and 45–57, on the grounds that they are offensive and immaterial. The parties have informed the court that they have come to an agreement regarding paragraphs 45–50 only: paragraphs 45–46 to remain as is, paragraph 47 to be stricken, paragraph 48 to be amended to state "A few days after the incident was made public, Platinum Corral responded to Leah's Facebook Post," and paragraph 50 to be stricken. (Notice of Agm't 1, Dkt. No. 37.) The parties have not come to any agreement, however, regarding Lipscomb's motion to strike paragraphs 4, 8, or 51–57.

Rule 12(f) allows the court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Information is "immaterial" for the purposes of Rule 12(f) if it has "no essential or important relationship to the claim for relief or the defenses being

9

pleaded[.]" *Thornhill v. Aylor*, No. 3:15-cv-24, 2016 WL 258645, at *2 (W.D. Va. Jan. 20, 2016) (citations omitted). An "impertinent" matter does not "pertain, and [is] not necessary, to the issues in question." *Id*. Finally, information is "scandalous" if it "improperly casts a derogatory light on someone, most typically on a party to the action." *Id*. "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Ca. 2005) (citing *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992)). Although motions to strike are generally viewed with disfavor, "the disfavored character of Rule 12(f) . . . is somewhat relaxed in the context of scandalous matter, and materials of this type often will be stricken from the pleadings in order to 'purge the court's files and protect the person who is the subject of the allegations.'" *Thornhill*, 2016 WL 258645, at *2 (citing Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed. 2004)).

The court will strike the following clause in paragraph 4 as immaterial and scandalous: "identifying Lipscomb and explaining that Lipscomb had a long history of being a dogged bigot, and racist." The court will strike the follow statement in paragraph 8 as immaterial and prejudicial: "Lipscomb has a criminal history that includes convictions for resisting arrest and obstructing a law enforcement officer." Indeed, the complaint later states that this criminal history includes only "charges filed and arrests." (Compl. ¶ 54.) Finally, the court will strike paragraphs 50–54, 56, and 57, as immaterial and scandalous. Plaintiffs' defamation claim does not require, or even relate to, Lipscomb's "storied community reputation as racist" (¶ 52) or that she "is well known in the Roanoke community as a racist who regularly uses the 'N' word to refer to African Americans, according to some." The court will not strike the remaining portions of paragraphs 4 and 8 or paragraph 55.

III.  CONCLUSION

For the foregoing reasons, the court will grant Lipscomb's motion to dismiss as to Count 2 and deny it as to Count 7.  The court will grant in part and deny in part Lipscomb's motion to strike.

An appropriate order will follow.

Entered: August 2, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge